PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FREDERICK G. D'AMICO *et al.*, | ) | |
| | ) | CASE NO.  4:25-cv-651 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| YOUNGSTOWN FILM OFFICE *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |
| | ) | [Resolving ECF No. 16] |

Pending before the Court is a Motion for Judgment on the Pleadings (ECF No. 16) filed by Defendants the Youngstown Film Office ("YFO") and former Youngstown Mayor Jamael Tito Brown[1] in his individual and official capacities.  The Motion is fully briefed.  Plf. Response Br., ECF No. 17; Defs. Reply Br., ECF No. 20.  Being duly advised, having reviewed the parties' briefs and applicable law, the Court grants the Motion in part as to Count II and declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims in Count I and Count III, which are each dismissed without prejudice.

## I.    BACKGROUND

Plaintiffs Frederick G. D'Amico and his not-for-profit organization, the Youngstown Regional Film Commission ("YRFC"), have promoted the Youngstown region to the film industry since 2015.  ECF No. 1 at PageID #: 2, ¶¶ 2, 7.  Plaintiffs helped film production teams

---

[1] Mr. Brown lost his re-election bid in 2025.  *See* David Skolnick, "McDowell unseats Youngstown Mayor Brown," THE VINDICATOR (Nov. 5, 2025).

(4:25CV651)

with location scouting, local talent retention, and film production assistance services.[2]  ECF No. 1 at PageID #: 3, ¶ 11.  YRFC maintained a database of local resources, including makeup artists, costume designers, prop makers, stunt professionals, electricians, food service providers, actors, and production crew members.  ECF No. 1 at PageID #: 3, ¶¶ 9–10, 13.  Defendant Ohio Film Office ("OFO"), which is responsible for promoting the making of movies in the State of Ohio, recognized and listed YRFC as a regional film commission on its website from 2015 until 2019.  ECF No. 1 at PageID ##: 3, 14, ¶¶ 15, 132.

The Youngstown Film Office ("YFO") was established around 2017 (after YRFC) under the direction and control of Defendant former Youngstown Mayor Jamael Tito Brown and his administration.  ECF No. 1 at PageID #: 8, ¶¶ 65–68.  YFO's function was substantially similar to YRFC's: promote Youngstown talent and businesses to the film industry.  ECF No. 1 at PageID #: 8, ¶ 69.  In February 2018, Plaintiff D'Amico met with Defendant Brown, Youngstown Law Director Jeffrey Limbian, and Mahoning County Board of Elections Member Robert Wasko to discuss YFO and YRFC.  ECF No. 1 at PageID #: 11, ¶ 97.  During that meeting, Defendant Brown allegedly said that he wanted control over YRFC but wanted no relationship with Plaintiff D'Amico.  ECF No. 1 at PageID #: 11, ¶¶ 98–102.  Plaintiff D'Amico understood those statements as threats against himself, his property, his reputation, and other interests.  ECF No. 1 at PageID #: 21, ¶ 181.

At an April 2019 OFO meeting in Columbus, Ohio, YFO announced that it was the only sanctioned film commission authorized to represent the Youngstown area.  ECF No. 1 at PageID #: 13, ¶¶ 117–18.  Shortly thereafter, OFO removed YRFC from its list of film commissions and

---

[2] For instance, Plaintiffs assisted two productions of the television show "Bar Rescue" in the Youngstown area.  ECF No. 1 at PageID #: 7, ¶ 61.

(4:25CV651)

added the following language to its website: "The local Ohio film commissions listed here are entities endorsed or supported by a local government with a commitment to the film industry as part of its economic development plan." ECF No. 1 at PageID #: 13, ¶¶ 119–120. In addition, OFO required that "all film commissions must be supported by a local municipality." ECF No. 1 at PageID #: 13, ¶ 121. Because the City of Youngstown would not support YRFC, Plaintiffs sought and received endorsement from the City of Lisbon in Columbiana County, within the Youngstown region. ECF No. 1 at PageID ##: 13–14, ¶¶ 122–25. OFO rejected this endorsement, requiring instead that YRFC be endorsed by the city in its name. ECF No. 1 at PageID #: 14, ¶¶ 126–28.

Defendant OFO filed a separate Motion to Dismiss (ECF No. 9), which the Court granted for lack of subject matter jurisdiction over Count I (tortious interference with a business relationship) and Count III (civil conspiracy) under the Eleventh Amendment, and failure to state a claim upon which relief may be granted for Count II (extortion and coercion). ECF No. 21.

## II. STANDARD OF REVIEW

The standard for resolving a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is indistinguishable from the standard for resolving a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399–400 (6th Cir. 1999)). The Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

3

(4:25CV651)

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations in the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  *Twombly, 550 U.S. at 555* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235–36 (3d ed. 2004)). "Although [a court's] review 'rests primarily upon the allegations of the complaint, maters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint [ ] may be taken into account.'"  *L.O.I. Prop., LLC v. Butler Cty., Ohio*, No. 22-3512, 2023 WL 3270901, at *4 (6th Cir. May 5, 2023) (quoting *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)) (cleaned up).

### III.    DISCUSSION

Although neither party raised the issue, the Court must confirm that it has subject matter jurisdiction to hear this case.  *Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264, 268 (6th Cir. 2007) (quoting *Thronton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990)) (recognizing that a federal court may *sua sponte* raise the issue of subject matter jurisdiction).  "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Court may only hear claims that involve a federal question, as defined in 28 U.S.C. § 1331, or when there is diversity jurisdiction, *see* 28 U.S.C. § 1332.  The parties in this case are not diverse.  *See* ECF No. 1 at PageID #: 4, ¶¶ 18–24.  Plaintiffs assert that subject matter jurisdiction is proper under § 1331.  ECF No. 1 at PageID #: 5, ¶ 34.  Federal question jurisdiction exists in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  A claim "arises" under federal law if: (1) "federal law creates the cause of action"; or (2) "the vindication of a right under state law necessarily turns on some construction of federal law."

(4:25CV651)

*Elmcroft of Sagamore Hills*, 566 F. Supp. 3d 771, 779 (N.D. Ohio 2021) (Lioi, J.) (citing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808–09 (1986)) (cleaned up).

In this case, Plaintiffs allege three claims against Defendants: (I) tortious interference of a business relationship; (II) coercion and extortion; and (III) civil conspiracy.  The Complaint also alleges that Counts I and II constitute violations of two federal criminal statutes: 18 U.S.C. § 873 (blackmail) and 18 U.S.C. § 1951 (interference with commerce by threats or violence).  ECF No. 1 at PageID ##: 21, 22, ¶¶ 177, 190.  Neither statute provides a civil cause of action for tortious interference with a business relationship.  Indeed, both Count I and Count III are governed by Ohio law, not federal law.  *See, e.g., Kenyon v. Union Home Mortg. Corp.*, 581 F. Supp. 3d 951, 955–56 (N.D. Ohio 2022) (recognizing Ohio law governed the plaintiff's claim for tortious interferences with a business relationship); *Georgia-Pacific Consumer Prod. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1102 (6th Cir. 2012) (relying on Ohio and Arkansas state law to resolve claims for tortious interference with a contractual and business relationship); *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446 (6th Cir. 2012) (assessing the plaintiff's civil conspiracy claim under Ohio common law).  In their response to OFO's motion to dismiss, Plaintiffs concede that Ohio law applies by citing to Ohio law for the elements of both claims. *See* ECF No. 12 at PageID ##: 65–67; *see L.O.I. Prop., LLC*, 2023 WL 3270901, at *4 (recognizing a court resolving a Rule 12(c) motion may consider items appearing in the record of the case).

Although not alleged in the Complaint, the Court may exercise supplemental jurisdiction over Plaintiffs' state law claims if "they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  "Claims form part of the same case or controversy when they 'derive from a common nucleus of operative facts.'"  *Blakely v. United*

5

(4:25CV651)

*States*, 276 F.3d 853, 861 (6th Cir. 2002) (quoting *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 454–55 (6th Cir. 1996)).  Therefore, the Court must first determine whether it has original jurisdiction over Count II and, if so, whether Plaintiffs' state-law claims "derive from a common nucleus of operative facts."

According to Plaintiffs, Defendants, in particular Defendant Brown, engaged in extortion and coercion in violation of federal law (18 U.S.C. §§ 873 and 1951) by threatening to harm Plaintiffs' "persons [*sic*], property, reputation, and other interests" and to shut out Plaintiffs from "their official business with the State of Ohio and the Region."  ECF No. 1 at PageID #: 22, ¶¶ 180–90.  Defendants argue that neither federal criminal statute cited by Plaintiffs provides a private cause of action.  ECF No. 16 at PageID ##: 91–92.  In response, Plaintiffs claim—for the first time—that "Count II is fundamentally a state law tort claim for coercion and extortion" and that the references to the federal criminal statutes are merely "illustrative of the nature and severity" of Defendants' conduct.  ECF No. 17 at PageID #: 97.  If, as Plaintiffs claim, Count II asserts a state-law tort claim, then Plaintiffs raise no federal claims, the Court lacks subject matter jurisdiction, and the Complaint must be dismissed in its entirety.  But nothing in Count II indicates that Plaintiffs allege a state-law tort claim for extortion and coercion; rather, Count II contends that Defendants violated "*federal* extortion laws, specifically 18 U.S.C. § 873 and 18 U.S.C. § 1951."  ECF No. 1 at PageID #: 22, ¶ 190 (emphasis added).  Therefore, Count II raises a federal question, giving the Court original jurisdiction over it.

Nevertheless, Defendants' argument concerning Count II is well taken.  Indeed, Defendant OFO made a virtually identical argument regarding Count II (ECF No. 9 at PageID #: 56), which the Court addressed in its Memorandum of Opinion and Order granting OFO's Motion to Dismiss.  ECF No. 21 at PageID #: 117.  As explained therein, neither § 873 nor §

6

(4:25CV651)

1951 provide a private cause of action for a private individual to recover civil damages.  ECF No. 21 at PageID #: 117; see *Afshari v. Montana Black Gold*, No. 20-5362, 2020 WL 9217980, at *3 (6th Cir. Dec. 17, 2020) (holding that private citizens lack a "judicially cognizable interest" in another's criminal prosecution under §§ 1951 or 873.).  Likewise, Count II herein is dismissed for failure to state a claim upon which relief may be granted.[3]

Having dismissed the only federal claim, the Court must determine whether to exercise supplemental jurisdiction over the remaining state-law claims in Counts I and III.  District courts have discretion "to decline to exercise supplemental jurisdiction [over state-law claims] when that [they have] dismissed all of the claims over which [they had] original jurisdiction." *Weeks v. Portage Cty. Exec. Offices*, 235 F.3d 275, 280 (6th Cir. 2000) (citing 28 U.S.C. § 1367(c)(3)); see *Geiling v. Wirt Fin. Servs., Inc.*, No. 15-1393, 2017 WL 6945559, at *3 (6th Cir. June 8, 2017) ("Absent an abuse of discretion, this court will not overturn a district court's decision to not exercise supplemental jurisdiction.").

In making this determination, district courts balance the values of judicial economy, convenience to the parties, fairness, and comity to state courts.  *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011).  "Comity to state courts is considered a substantial interest; therefore, [the Sixth Circuit] applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed[.]" *Id.* (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)); *Experimental Holdings, Inc. v. Farris,* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.").

---

[3] The relevant parts of the Court's prior ruling are incorporated herein.

(4:25CV651)

Assuming, *arguendo*, that the Court has supplemental jurisdiction over Counts I and III in the first instance, the Court declines to exercise that jurisdiction after dismissing Count II (the only federal question claim alleged).  Exercising supplemental jurisdiction over the remaining state-law claims would not promote judicial economy, fairness, or party convenience, nor do such considerations outweigh the substantial interest of comity to state courts and the strong presumption against retaining supplemental jurisdiction after all federal claims are dismissed. *See Packard*, 423 F. App'x at 584 (citing *Moon*, 465 F.3d at 728).

Because the Court declines to exercise jurisdiction over the remaining state-law claims, it does not address the issues of whether YFO is *sui juris* or whether Plaintiffs' tortious interference with a business relationship and civil conspiracy claims are timely.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings (ECF No. 16) is granted, in part, as to Count II.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims alleged in Count I and Count III.  Both are dismissed without prejudice.


IT IS SO ORDERED.


April 10, 2026                                                                     */s/ Benita Y. Pearson*
Date                                                                                 Benita Y. Pearson
                                                                                         United States District Judge

8